JAMES JENSEN, APPELLEE, v. DODD BARNETT ET AL., APPELLANTS, IMPLEADED WITH JAKE EBERT, APPELLEE.

134 N. W. 2d 53

Filed March 12, 1965. No. 35844.

Donald H. Kelley and Merritt E. James, for appellants.

McGinley, Lane, Mueller & Shanahan, for appellee Jensen.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SMITH, J.

A hotel guest was lodged behind bars. False arrest and imprisonment by the hotelkeepers and damages of $2,500 were conclusions of a jury.

Errors assigned and discussed by defendants relate to sufficiency of the evidence. In their view these propositions are correct: (1) The arrest was made by a chief of police in the exercise of his independent judgment and not upon the persuasion of defendants; and (2) the verdict is excessive.

The evidence describes an unusual occurrence. The guest, James Jensen, was a contractor engaged primarily by telephone and power companies to clear their rights-of-way. En route to a job he arrived at Ogallala, Nebraska, on December 11, 1962, with four employees and some equipment.

At 3:35 p.m. an employee registered for Jensen at the hotel, paid in advance the daily rate of $3, and received a room assignment.

Jensen spent 5 hours at the Hi-Way Inn. He drank five or six glasses of beer and tomato juice, or three bottles of beer, and felt no effects. He also ate lunch. About 11:30 p.m. he left the Hi-Way Inn and went to the hotel.

At the hotel desk he conversed with the clerk, Jake Ebert, with whom he had become acquainted during previous stopovers. Trouble began. A regular request for a room key provoked a vulgar reply. An ejection order was accompanied by unfair accusations—use of an assumed name and failure to be registered.

Glen Livingston, a retired rancher wintering at the

hotel, was present during the first 10 minutes of the altercation. In his opinion Jensen, a stranger to him, was quiet and sober. Livingston walked behind the desk upon Ebert's invitation, located the registration card, and recommended delivery of the key. His service was acknowledged by an instruction to leave the desk. He left the scene.

At times Ebert was incoherent. Another sum of $3 was paid on his demand. The key remained undelivered. Registration was next demanded but refused. With Jensen's assent Ebert then telephoned the police.

One of two versions of the arrest was told by Jensen. Veldon Fuller, chief of police, entered the lobby and said to Ebert, "Which one is it?" A gesture identified Jensen. Without comment Fuller then started to take hold of him. Jensen turned away but peaceably walked out to the police car.

The other version was told by Fuller. In answer to a call at 12:56 a.m. from the hotel, he entered the lobby. Ebert directed the removal of Jensen, who was standing quietly near a wall. At the trial Fuller did not remember whether Ebert had said, "throw him in jail." After Jensen refused to leave the hotel, Fuller informed him that he was under arrest for intoxication, a condition seen by Fuller and later by a radio operator at the station.

Jensen was taken to the police station and imprisoned. At 8 a.m. he was arraigned and released on bond. Later the charge against him was dismissed.

The problem is not so much the governing rules as it is their application. A private citizen who by affirmative direction, persuasion, or request procures an unlawful arrest and detention of another is liable for false imprisonment. However, if he merely states to a peace officer his knowledge of a supposed offense and the officer makes the arrest entirely upon his own judgment and discretion, the informer is not liable. See, Edgar v. Omaha Public Power Dist., 166 Neb. 452, 89 N. W. 2d

238; Baker v. Coon, 102 Neb. 243, 166 N. W. 555; Van Dorn v. Kimball, 100 Neb. 590, 160 N. W. 593.

A corollary imposes liability upon an informer if he knowingly gives to an officer false information which is a determining factor in his decision to make an arrest. See 1 Harper & James, The Law of Torts, § 4.11, p. 339.

An informer's connection with an arrest may be inferred. Jonson v. Heller, 142 Neb. 380, 6 N. W. 2d 359. Procurement is inferable here. Not unreasonable in law are these findings: (1) Ebert knowingly conveyed to Fuller false information that a breach of the peace had been committed by Jensen; and (2) the false information was a determining factor in Fuller's decision.

One objection of defendants to the amount of the verdict is Jensen's failure to mitigate damages. Assuming that imprisonment was a consequence of the wrongful ejection instead of an independent tort, they argue that Jensen should have departed prior to the arrest.

One answer suffices. Implicit in the verdict is a finding that his presence was privileged. Skirting the problem of maintenance by force, we are satisfied that a baseless order of ejection does not put the privilege to flight. Compare, Erie R. R. Co. v. Winter, 143 U. S. 60, 12 S. Ct. 356, 36 L. Ed. 71; Barrett v. Sear, 128 Ind. 261, 27 N. E. 607; Hufford v. Grand Rapids & Ind. Ry. Co., 53 Mich. 118, 18 N. W. 580; Arnold v. Rhode Island Co., 28 R. I. 118, 66 A. 60, 125 Am. S. R. 721; 14 Am. Jur. 2d, Carriers, § 1096, p. 514; 13 C. J. S., Carriers, § 824, p. 1638.

To the other objection we apply the theory of the parties that in the cause of action under review the pecuniary losses resulting from the charge of intoxication are recoverable. There was evidence of substantial harm. Expenses and loss of profits were approximately $400. Embarrassment and business worry were shown. Telephone and power companies expected Jensen to maintain good public relations, for his was the duty of obtaining consents to clear rights-of-way. Company

representatives and others questioned him concerning the occurrences.

The amount of the verdict is within reasonable limits. "The law does not prescribe a definite rule for the ascertainment of the exact amount recoverable for false imprisonment." Doescher v. Robinson, 132 Neb. 299, 271 N. W. 784.

The judgment on the verdict should be, and is, affirmed.

AFFIRMED.